# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

PNC BANK, N.A.,

                                **Plaintiff,**

v.                                            **Case No:   6:13-cv-1558-Orl-28KRS**

KIMBROUGH & ASSOCIATES, LLC
and LESLIE K. KIMBROUGH,

                                **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

        This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PNC BANK N.A.'S SECOND RENEWED MOTION FOR FINAL DEFAULT JUDGMENT ON BORROWER (Doc. No. 24)** |
| **FILED:** | **September 5, 2014** |

## I.    PROCEDURAL HISTORY.

        On October 8, 2013, Plaintiff, PNC Bank, N.A. ("PNC") filed a verified complaint against Defendants Kimbrough & Associates, LLC ("Kimbrough & Associates"), and Leslie K. Kimbrough ("Kimbrough").   Doc. No. 1.   PNC alleged breach of two letter of credit agreements against Kimbrough & Associates and breach of two guaranties against Kimbrough.   PNC also included a count for replevin and judicial foreclosure of the collateral securing the obligations at issue in this case.   PNC attached the following documents to the complaint:

- April 6, 2005, Business Banking Line of Credit Agreement (Doc. Nos. 1-2, 1-3);

- January 14, 2009, letter from PNC to Kimbrough & Associates stating that its line of credit had been renewed and extending the expiration date for the line of credit agreement to April 6, 2010 (Doc. No. 1-4);

- February 1, 2010, letter from PNC to Kimbrough & Associates stating that its line of credit had been renewed and extending the expiration date for the line of credit agreement to April 6, 2011 (Doc. No. 1-5);

- January 13, 2011, letter from PNC to Kimbrough & Associates stating that its line of credit had been renewed and extending the expiration date for the line of credit agreement to April 6, 2012 (Doc. No. 1-6);

- January 26, 2012, letter from PNC to Kimbrough & Associates stating that its line of credit had been renewed and extending the expiration date for the line of credit agreement to April 6, 2013 (Doc. No. 1-7);

- Two copies of a State of Florida Uniform Commercial Code Financing Statement Form, filed with the Florida Secured Transaction Registry as Instrument Number 201309907429 on September 26, 2013 (Doc. Nos. 1-8, 1-10);

- August 5, 2005, Business Credit Line and Security Agreement (Doc. No. 1-9);

- August 12, 2013, and September 9, 2013, letters informing Kimbrough & Associates and Kimbrough that they had defaulted on their obligations to PNC and demanding payment (Doc. No. 1-11);

- Certifications that National City Bank of Kentucky merged into National City Bank on July 22, 2006, that National City Bank was a wholly owned subsidiary of National City Corporation, and that National City Corporation merged into PNC effective November 6, 2009 (Doc. Nos. 1-12, 1-13).

Both Defendants were properly served with the complaint.   Doc. Nos. 7, 8.   Neither Defendant timely appeared or responded to the complaint, and the Clerk of Court entered defaults against Defendants following motions by PNC.   Doc. Nos. 10, 11.

On January 13, 2014, PNC filed a motion for default judgment, which was denied without prejudice.   Doc. No. 13.   On February 27, 2014, Kimbrough filed a voluntary petition for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Kentucky.   *See In re Kimbrough*, Case No. 5:14-bk-50446 (Bankruptcy Petition #14-5-446-grs), Doc. No. 1 (Bankr. E.D. Ky. Feb. 27, 2014).   PNC filed a renewed motion for default judgment on March 13, 2014.

Doc. No. 14.   In light of Kimbrough's bankruptcy filing, the Court issued an order staying the case and terminating PNC's renewed motion for default judgment.   Doc. No. 20.   The Court, however, indicated that PNC would be permitted to file a second renewed motion for default judgment, if appropriate, following the conclusion of Kimbrough's bankruptcy proceeding.   *Id.*

On August 20, 2014, the Bankruptcy Court for the Eastern District of Kentucky granted Kimbrough a Chapter 7 discharge.   Doc. No. 22-1.[1]   Accordingly, on August 29, 2014, PNC moved to reopen the case in order to proceed with its claims against Kimbrough & Associates only.   Doc. No. 22.   The case was reopened, Doc. No. 23, and PNC filed a second renewed motion for default judgment against Kimbrough & Associates, Doc. No. 24.   PNC attached the following to the second renewed motion:

- Supplemental affidavit as to amounts due and owing, signed by PNC Asset Manager James Rhea (Doc. No. 24-1);

- Supplemental affidavit of costs signed by counsel for PNC, John A. Anthony, Esq., with attached documentation associated with the costs requested in this case (Doc. No. 24-2);

- Affidavit of attorneys' fees signed by Attorney Anthony with attached timesheet (Doc. No. 24-3).

Kimbrough & Associates was served with the second renewed motion (*see* Doc. No. 24 at 20), but did not file a timely response.   PNC's second renewed motion for default judgment was referred to me for issuance of a Report and Recommendation.   In response to a supplemental briefing order, PNC submitted a second supplemental affidavit as to amounts due and owing, with loan history documents attached.   Doc. No. 26-1.   PNC's second renewed motion for default judgment is now ripe for resolution.

---

[1] Based on this discharge, Counts III and IV of the complaint alleging breach of guaranties against Kimbrough are due to be dismissed.

## II.     APPLICABLE LAW.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry.   *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law.").   Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether [the] plaintiff is entitled to" a default judgment.   *Fid. & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default.   Rather, the Court determines the amount and character of damages to be awarded."   *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).   If a default judgment is warranted, the court may hold a hearing for the purposes of assessing damages.   Fed. R. Civ. P. 55(b)(2); *see also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).   However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages.   *See Smyth*, 420 F.3d at 1232 n.13.

## III.     ALLEGATIONS OF THE COMPLAINT.[2]

PNC is a national banking association.   Doc. No. 1 ¶ 1.   Its main office, as stated in its articles of association, is located in Delaware.   *Id.*   Kimbrough & Associates is a Kentucky limited liability company.   It has only one member -- an individual who is a citizen of Florida.   *Id.* ¶ 2.   This lawsuit relates to two loans made pursuant to two lines of credit.   PNC alleges that

---

[2] As mentioned above, PNC attached several documents to the complaint.   Pursuant to Fed. R. Civ. P. 10(c), I consider those documents to be incorporated into the complaint.

it is the holder and owner of the loan documents that are the subject of this action.   *Id.* ¶ 18.   I discuss each of the lines of credit separately, below.

      A.      *The First Obligation.*

      On April 6, 2005, PNC and Kimbrough & Associates entered into a Business Banking Line of Credit Agreement, in the original principal amount of $100,000.00 (sometimes referred to as the "First Obligation").   Doc. No. 1 ¶ 11(a); Doc. Nos. 1-2, 1-3.   Kimbrough signed the agreement on behalf of Kimbrough & Associates.   Doc. No. 1-3.

      Pursuant to the terms of the First Obligation, Kimbrough & Associates agreed to repay all amounts advanced under the agreement together with interest.   Doc. No. 1-2 at 4.[3]   It also agreed that, if it failed to make payments by the due date, PNC could charge a late charge of $100 or 5% of the amount past due, whichever was less.   *Id.*   The agreement defined several events that would constitute a default, including failure to pay any payment when it was due or if PNC, in good faith, deemed itself insecure.   *Id.* at 5.   Pursuant to the agreement, if an event of default occurred, all amounts which Kimbrough & Associates owed to PNC would be due and payable immediately, at PNC's option, without prior notice or right to cure, except as required by law.   *Id.* If, upon default, PNC declared the entire outstanding principal, unpaid interest, and charges on the account immediately due and payable, Kimbrough & Associates would be required to pay that amount immediately.   Kimbrough & Associates agreed to pay PNC's collection costs, including attorneys' fees, legal expenses, and court costs.   *Id.*   Kimbrough & Associates also authorized PNC to execute and file UCC financing statements and agreed to pay the cost of preparing and

---

[3] Throughout this Report and Recommendation, citations are to the page numbers assigned when a document was filed in CM/ECF, not to original page numbers appearing in the document.

filing such statements in all jurisdictions in which such filing was deemed to be necessary or desirable.   Doc. No. 1-3 at 2.

To secure the obligations embodied in the First Obligation, Kimbrough & Associates agreed to assign and grant to PNC, "as a secured party, a continuing lien on and security interest in" certain collateral, which was defined in the agreement.   Doc. No. 1-3 at 1.   Kimbrough agreed that, until the First Obligation was paid in full, he would postpone and subordinate in favor of PNC any and all rights that he might have had to assert any claim against Kimbrough & Associates or any property of Kimbrough & Associates.   *Id.* at 6.

PNC filed a UCC Financing Statement reflecting its security interest in the collateral (as defined by the First Obligation) on September 26, 2013.   Doc. No. 1 ¶ 11(f); Doc. No. 1-8.

The original term of the First Obligation was extended multiple times, with the most recent extension being executed and delivered on January 26, 2012, extending the maturity date of the line of credit to April 6, 2013.   Doc. Nos. 1-4, 1-5, 1-6, 1-7.

B.      *The Second Obligation.*

On August 5, 2005, National City Bank of Kentucky and Kimbrough & Associates entered into a Business Credit Line and Security Agreement, in the original principal amount of $60,000.00.   Doc. No. 1 ¶ 11(g); Doc. No. 1-9.   Kimbrough signed the agreement on behalf of Kimbrough & Associates.   Doc. No. 1-9.

Pursuant to the agreement, any advances made would be subject to finance charges.   Doc. No. 1-9 at 2.   Kimbrough & Associates agreed to be liable for all advances, finance charges, and other amounts charged to its line of credit account.   Kimbrough & Associates would receive a monthly statement and agreed to pay at least the minimum payment reflected on the statement. *Id.* at 3.   Pursuant to the agreement, if any payment was more than 10 days late, Kimbrough &

Associates could incur a late charge of $40 or 10% of the amount due, whichever was greater.   *Id.* at 2.   To secure obligations under the agreement, Kimbrough & Associates granted the bank a security interest in all inventory, chattel paper, accounts, equipment, and general intangibles that Kimbrough & Associates owned at the time of the agreement or acquired thereafter.   *Id.* at 3. Kimbrough & Associates also agreed to pay any recording fees associated with any security interest securing the line of credit.   *Id.* at 2.

The agreement provided for several events that would constitute a default, including the failure to make any payment when due under the agreement and the lender's good faith belief that the borrower would not be able to meet repayment requirements due to an adverse change in financial circumstances.   Doc. No. 1-9 at 5.   Upon the occurrence of a default, the account would, at the lender's option, become immediately due and payable without demand or notice. *Id.*   Kimbrough & Associates agreed to pay upon demand all of the lender's costs and expenses, "including without limitation court costs and reasonable attorney's fees, incurred in connection with the enforcement" of the agreement.   *Id.*

National City Bank of Kentucky (the original lender for the Second Obligation) merged with National City Bank on July 22, 2006.   Doc. No. 1-12.   In 2009, National City Bank merged with and into PNC.   Doc. No. 1-13.   PNC owns and holds the original loan documents to the extent required by law to bring its causes of action, as successor-in-interest by merger with National City Bank, which in turn is a successor-in-interest by merger with National City Bank of Kentucky.   Doc. No. 1 ¶ 18.

PNC filed a UCC Financing Statement reflecting its security interest in the collateral securing the Second Obligation on September 26, 2013.   Doc. No. 1 ¶ 11(h); Doc. No. 1-10.

C.       *The Defaults and PNC's Demands for Payment.*

Kimbrough & Associates defaulted on the First Obligation by failing to make full payment at the time it matured on April 6, 2013.   Doc. No. 1 ¶ 12.   It also defaulted on the Second Obligation by failing to make the required March 2013 installment payment and all payments thereafter.   *Id.*

As a result of these defaults, PNC deemed itself insecure, accelerated the full amount of the First and Second Obligations, to the extent necessary and required and demanded payment of the same.   Doc. No. 1 ¶ 13.   Specifically, on August 12, 2013, Plaintiff sent Kimbrough & Associates a letter in which it demanded that Kimbrough & Associates immediately repay the loans made pursuant to the First and Second Obligations.   Doc. No. 1-11 at 2-4.   On September 9, 2013, PNC's counsel sent Kimbrough & Associates a letter in which counsel renewed PNC's previous demand for immediate payment of the amounts owing under the First and Second Obligations.   *Id.* at 5-8.   Kimbrough & Associates has not paid the amounts due under the First and Second Obligations.   Doc. No. 1 ¶ 14.

As of October 4, 2013, Kimbrough & Associates owed PNC $97,119.19 pursuant to the First Obligation.[4]   *Id.*   As of that date, Kimbrough & Associates also owed PNC $55,436.39 pursuant to the Second Obligation.[5]   *Id.*   Interest continues to accrue on the payoff amount of both Obligations.   PNC has calculated interest based on the non-default contract rate set forth in the First and Second Obligations.   *Id.*   PNC has a contractual right to recover additional accruing fees pursuant to the terms of the First and Second Obligations.   *Id.* ¶ 15.   The First and Second

---

[4] This amount consists of $93,511.32 in principal, $3,131.11 in interest, and $476.76 in late charges.   Doc. No. 1 ¶ 14.

[5] This amount consists of $52,207.15 in principal, $2,936.06 in interest, and $293.18 in late charges.   Doc. No. 1 ¶ 14.

Obligations include Kimbrough & Associates' liability for reimbursement of attorneys' fees, court costs, and related compensable expenses incurred in prosecuting and enforcing PNC's rights and remedies pursuant to the First and Second Obligations.   *Id.* ¶ 16.

    *D.*    *Interests in Collateral.*

The First and Second Obligations were secured by all or substantially all of the assets of Kimbrough & Associates, including inventory, equipment, and accounts receivable (the "Collateral").   Doc. No. 1 ¶ 10; Doc. No. 1-3 at 1; Doc. No. 1-9 at 3.   Any right, title, or interest that Kimbrough & Associates or Kimbrough might claim in the Collateral is junior and inferior to that of PNC.   Doc. No. 1 ¶ 37; *see also* Doc. No. 1-3 at 1, 6 ("Until [all loans, advances, debts, liabilities, obligations, covenants and duties owing from Kimbrough & Associates to PNC of any kind, present or future, including those acquired by assignment] are paid in full, each Guarantor postpones and subordinates in favor of the Bank any and all rights which such Guarantor may have to assert any claim against any Borrower or to any realization on any property of any Borrower.").   Pursuant to the loan documents underlying the First and Second Obligations, PNC is entitled to possession of the Collateral in light of Kimbrough & Associates' failure to pay the amounts due and owing under those documents.   Doc. No. 1 ¶ 33.

## IV.    ANALYSIS.

    *A.*    *Liability.*

PNC seeks a default judgment against Kimbrough & Associates for breach of the terms of the First Obligation (Count I) and breach of the terms of the Second Obligation (Count II).   PNC also seeks to foreclose its security interest in the Collateral (Count V).[6]   I discuss each Count separately, below.

---

[6] Count V originally included a request for foreclosure of its security interest and for a writ of replevin.   With its second renewed motion for default judgment, PNC has opted to pursue only the request

      1.     <u>Counts I and II: Suit on First Obligation and Suit on Second Obligation</u>.

The Business Banking Line of Credit Agreement for the First Obligation provides that Kentucky law governs the interpretation of the agreement and the determination of the rights and liabilities of the parties.   Doc. No. 1-2 at 7.   The Business Credit Line and Security Agreement for the Second Obligation provides that agreement is to be governed by and construed in accordance with the law of Kentucky.   Doc. No. 1-9 at 6.   Despite this, PNC's second renewed motion for default judgment suggests that Florida law might apply because Kimbrough & Associates and Kimbrough have since moved to Florida and because the collateral is located in Florida.   Doc. No. 24 at 10.   The Court need not resolve this discrepancy, however, because the same results obtain whether Florida or Kentucky law applies.

Under both Kentucky and Florida law, an action for breach of a promissory note is a breach of contract action.   *See Wane v. Loan Corp.*, 926 F. Supp. 2d 1312, 1324 (M.D. Fla. 2013); *Aetna Oil Co. v. Glenn*, 53 F. Supp. 961, 966 (W.D. Ky. 1944) (noting that, under Kentucky law, every promissory note is also a contract); *In re Nonneman*, No. 11-51775, 2012 WL 4050879, at *5 (Bankr. E.D. Ky. Sept. 13, 2012) (applying Kentucky contract law to a suit for breach of promissory note).   The elements of a breach of contract action in both Kentucky and Florida are: (1) a valid contract; (2) a material breach; and (3) damages.   *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007); *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th Dist. Ct. App. 2000).   To succeed on an action for breach of a promissory note, a plaintiff must also establish that it is the owner of the note and that it

---

for foreclosure of its security interest in the Collateral.   Doc. No. 24 ¶ 41.   Accordingly, PNC has abandoned its request for a writ of replevin, and I do not discuss it further in this Report and Recommendation.

possesses the original note.   *Dasma Invs., LLC v. Realty Assocs. Fund III, L.P.*, 459 F. Supp. 2d 1294, 1302 (S.D. Fla. 2006).

By its failure to respond to the complaint, Kimbrough & Associates admits that it executed the Business Banking Line of Credit Agreement for the First Obligation and the Business Credit Line and Security Agreement for the Second Obligation.   Doc. No. 1 ¶ 11(a) and (g); Doc. No. 1-2; Doc. No. 1-3; Doc. No. 1-9.   Each document was signed by Kimbrough in his capacity as a member of Kimbrough & Associates.   Doc. No. 1-3 at 7; Doc. No. 1-9 at 6.   Kimbrough & Associates admits that PNC is the owner and holder of the Business Banking Line of Credit Agreement for the First Obligation and the Business Credit Line and Security Agreement for the Second Obligation.   Doc. No. 1 ¶ 18.[7]   It also admits that PNC is entitled to enforce those agreements and that, as to the Second Obligation, PNC is a successor-in-interest to the original lender, National City Bank of Kentucky.   *Id.*

Kimbrough & Associates further admits that it defaulted on the First Obligation by failing to make full payment on that obligation at the maturity of the obligation on April 6, 2013, and that it defaulted on the Second Obligation by failing to make the March 2013 monthly installment payment on that obligation and all payments thereafter.   *Id.* ¶ 12.   These admissions are sufficient to establish each element of the breach of the First and Second Obligations alleged in Counts I and II of the complaint.

2.     Count V: Judicial Foreclosure of Collateral.

Under either Florida or Kentucky law, judicial foreclosure is a remedy available to creditors who hold a security interest in personal property.   Fla. Stat. § 679.601(1)(a); Ky. Rev. Stat. § 355.9-601(1)(a).   In order to be entitled to judicial foreclosure, the plaintiff must show that

---

[7] PNC has also confirmed that it possesses the original loan documents.   *See* Doc. No. 24-1 ¶ 7.

it is the holder of a security interest in the collateral and that it is the holder of the note that is secured by such interest. *Lizio v. McCullom*, 36 So. 3d 927, 929 (Fla. 4th Dist. Ct. App. 2010); *Acuff v. Wells Fargo Bank, N.A.*, No. 2012-ca-001221-mr, 2014 Ky. App. LEXIS 72, 7-15 (Ky. Ct. App. May 9, 2014).   The plaintiff must also show that the debtor defaulted on the terms of the note.

By its default Kimbrough & Associates admits that the First and Second Obligations are secured by an interest in Kimbrough & Associates' inventory, chattel paper, accounts, equipment, and general intangibles.   Doc. No. 1-3 at 1; Doc. No. 1-9 at 3.   PNC is the holder of both the security interest and the underlying notes.   Doc. No. 1 ¶ 18.   Kimbrough & Associates has defaulted on the terms of the First Obligation by failing to make full payment on that obligation at the maturity of the obligation on April 6, 2013.   *Id.* ¶ 12.   It defaulted on the Second Obligation by failing to make the March 2013 monthly installment payment.   *Id.*   Accordingly, PNC is entitled to judicial foreclosure.

B.     *Damages.*

1.     First Obligation Damages.

PNC seeks an award of damages against Kimbrough & Associates.   In support of its second renewed motion for default judgment, PNC filed a supplemental affidavit and a second supplemental affidavit from PNC Asset Manager James Rhea.   Doc. No. 24-1; Doc. No. 26-1. Mr. Rhea avers that with respect to the First Obligation, as of August 28, 2014, PNC is owed $93,511.32 in principal, plus $10,160.15 in interest accruing at a rate of $21.43 per day.   Doc. No. 26-1 ¶ 9.

The First Obligation loan documents, attached to the second supplemental affidavit, verify that the unpaid principal balance on the First Obligation is $93,511.32.   Doc. No. 26-1 at 23.

Therefore, I recommend that the Court find that PNC is owed $93,511.32 in unpaid principal on the First Obligation.

The per diem rate is also verified.   The interest rate for the First Obligation is equal to the value of the highest prime rate of interest, as published in the Money Rates Table of The Wall Street Journal, plus 5% due to default status.   Doc. No. 1-2 at 4-5.   The loan agreement provides that the per diem rate is computed on a 365/360 simple interest basis, where the per diem rate is equal to the interest rate multiplied by the principal amount, and divided by 360 days.   *Id.* at 4. Here, the interest rate computes to 8.25%.   Doc. No. 26-1 ¶ 13.   Multiplying 8.25% by the principal amount of $93,511.32 and dividing by 360 days produces the per diem amount of $21.43.   The loan history documents attached to Mr. Rhea's affidavit show that the last interest payment made on the loan was for interest that accrued on May 10, 2013.   *Id.* at 21-22.   Since that payment, Kimbrough & Associates has not made any payments towards interest.   Mr. Rhea correctly calculates the interest due through August 28, 2014, to be $10,160.15.   Accordingly, I recommend that the Court find that PNC is entitled to interest in the amount of $10,160.15 through August 28, 2014, and prejudgment interest in the amount of $21.43 per day through the date of entry of judgment.

Mr. Rhea also avers that PNC is owed $476.76 in First Obligation late fees.   *Id.* ¶ 9.   The loan history verifies that from March 21, 2013, to August 21, 2013, six late fees totaling $476.76 were assessed.   *Id.* at 21-22.   Kimbrough & Associates has never objected to the assessment of these late fees.   Thus, in the absence of an objection, I recommend that the Court find that PNC is also entitled to $476.76 in First Obligation late fees.

2.        Second Obligation Damages.

Mr. Rhea avers with respect to the Second Obligation that, as of August 28, 2014, PNC is owed $52,207.15 in principal, $7,098.38 in interest accruing at a rate of $12.69 per day and $293.18 in late charges.   Doc. No. 26-1 ¶ 9.

The Second Obligation statements, attached to Mr. Rhea's second supplemental affidavit, verify that the unpaid principal balance on the Second Obligation is $52,207.15.   *Id.* at 55. Therefore, I recommend that the Court find that PNC is entitled to unpaid principal on the Second Obligation in the amount of $52,207.15.

The per diem rate is also verified.   As of March 2009, the interest rate, referred to in the Second Loan Obligation as finance charges (Doc. No. 1-9 at 2 ¶ 3), was modified to the Index plus 5.5%, which corresponds to an interest rate of 8.75%.   Doc. No. 26-1 at 59.   The loan agreement provides that the per diem rate is computed on a 365/360 simple interest basis, where the per diem rate is equal to the interest rate multiplied by the principal amount, and divided by 360 days. Doc. No. 1-9 at 2 ¶ 3; Doc. No. 26-1 ¶ 15.   Multiplying 8.75% by the principal amount of $52,207.15 and dividing by 360 days produces the per diem amount of $12.69.   The statements submitted as the loan history for the Second Obligation reflect that on September 6, 2013, there was a charge-off of "finance charges" in the amount of $2,835.85.   Doc. No. 26-1 at 55.   Because there was no separate charge-off for late fees, and finance charges and fees are grouped together in the Second Obligation (Doc. No. 1-9 at 2 ¶ 3), I construe the charge-off of finance charges to be composed of $293.18 in late fees and $2,542.67 in interest.   This interest amount added to the additional interest accrued at the rate of $12.69 per day through August 28, 2014, the date used by Mr. Rhea in his second supplemental affidavit, supports his calculation of interest due of $7,098.38.   Doc. No. 26-1 ¶ 9.   Therefore, I recommend that the Court find that PNC is entitled

to unpaid interest on the Second Obligation in the amount of $7,098.38 and additional prejudgment interest at the rate of $12.69 per day through the date of entry of judgment.

Mr. Rhea also avers that PNC is entitled to $293.18 in Second Obligation late charges.   *Id.* The late charges are also verified by the statements, which show that from the February 1, 2013, statement through the September 2, 2013, statement, there were seven late charges assessed totaling $293.18.   *Id.* at 31-56.   In accordance with the loan documents, the late charges assessed were consistently no more than the greater of $40.00 or 10% of the minimum payment due. Accordingly, I recommend that the Court find that PNC is also entitled to $293.18 for Second Obligation late fees.

I recommend that the Court direct PNC to provide the final calculation of damages, including prejudgment interest, as of a date established by the Court for entry of final judgment.

C.       *Foreclosure of Collateral.*

In its prayer for relief, PNC seeks an order directing the United States Marshals Service to sell the collateral that is the subject of Count V of the complaint.   Doc. No. 24 at 20.   Although counsel for PNC represents that a proposed order is attached to the motion, there is no such attachment.   Accordingly, within the time permitted to object to this Report and Recommendation, PNC shall file a supplemental memorandum identifying the Collateral to be sold with specificity and its location.   The supplemental memorandum shall be supported by a proposed final order and a proposed order directing the United States Marshals Service to hold a foreclosure sale.

D.      *Attorneys' Fees.*

PNC seeks an award of $2,909.50 in attorneys' fees against Kimbrough & Associates

pursuant to the terms of the loan documents.   Specifically, the loan documents provide as follows:

> [First Obligation] Business Banking Line of Credit Agreement: "We may hire or
> pay someone else to help us collect this account if you fail to pay in accordance
> with this Agreement.   You agree to pay our collection costs (including, without
> limitation, the cost of in-house attorneys and staff), whether or not we hire anyone
> else to help us collect this account.   This includes, subject to any limits under
> applicable law, our attorneys' fees and legal expenses whether or not there is a
> lawsuit . . . ."   (Doc. No. 1-2 at 5 ¶ 18);

> [Second Obligation] Business Credit Line and Security Agreement: "Borrower
> agrees to pay upon demand all of Lender's costs and expenses, including without
> limitation court costs and reasonable attorney's fees, incurred in connection with
> the enforcement of this Agreement or the enforcement or protection of Lender's
> rights in the Property . . . ."   (Doc. No. 1-9 at 5 ¶ 16).

Based on the language of these agreements, I recommend that the Court find that an award of

attorneys' fees against Kimbrough & Associates is appropriate in this case.

In support of its request, PNC has supplied an Affidavit of Attorneys' Fees, signed by

Attorney Anthony, one of PNC's attorneys.   Doc. No. 24-3.   In the affidavit, Attorney Anthony

avers that PNC has paid or is obligated to pay $2,909.50 as a fee for services rendered in this

action.   *Id.* ¶ 9.   The affidavit includes a timesheet showing the work for which an award is

sought.   *Id.* at 6-8.   Attorney Anthony asserts that the fees requested are reasonable and meet the

factors established in applicable precedent.   *See id.* ¶ 6 (citing, *inter alia*, *Norman v. Housing*

*Auth.*, 836 F.2d 1292, 1302 (11th Cir. 1988); *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145

(Fla. 1985); *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 835 (Fla. 1990); *Johnson v.*

*Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

The Florida Supreme Court has adopted the federal lodestar approach as the foundation for

setting reasonable fee awards.   *See Fla. Patient's Comp. Fund*, 472 So. 2d at 1150.   This

approach requires the Court to determine the number of hours reasonably worked and the

reasonable hourly rate in the relevant community for each professional for whose work fees are sought.

1.   Reasonable Hours Worked.

"The first step in the lodestar process requires the court to determine the number of hours reasonably expended on the litigation."   *Id.*   In this context, the number of hours "'[r]easonably expended' means the time that ordinarily would be spent by lawyers in the community to resolve this particular type of dispute."   *Centex-Rooney Constr. Co. v. Martin Cnty.*, 725 So. 2d 1255, 1258 (Fla. 4th Dist. Ct. App. 1999) (quoting *In re Estate of Platt*, 586 So. 2d 328, 333-34 (Fla. 1991)).   Fee applicants are expected to exercise "billing judgment," and, if they do not, "courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary."   *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (internal quotation omitted).

PNC requests an award of 15.7 hours of attorney work and 1.8 hours of paralegal work. Doc. No. 24-3 ¶ 8.[8]   Upon review of the timesheets submitted by Attorney Anthony, I recommend that the Court find that the time worked on this case was reasonable and compensable.

2.   Reasonable Hourly Rates.

The second step in the lodestar process "requires the court to determine a reasonable hourly rate."   *See Fla. Patient's Comp. Fund*, 472 So. 2d at 1150.   Attorney Anthony avers that four attorneys and two paralegals performed work on this case.   *See* Doc. No. 24-3 ¶ 8.   PNC seeks to recover $175.00 per hour for the work of all the attorneys and $90.00 per hour with respect to the work of the paralegals.   *Id.*   I note that in *PNC Bank, N.A. v. Starlight Properties &*

---

[8] I note that the time sheet attached to Attorney Anthony's affidavit reflects an additional 1.1 hours of attorney time which PNC is not seeking to recover.

*Holdings, LLC*, No. 6:13-cv-408-Orl-36KRS, 2014 U.S. Dist. LEXIS 78087, at *27 (M.D. Fla. Apr. 25, 2014), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 78086 (M.D. Fla. June 9, 2014), these hourly rates were found by the Court to be reasonable for the work of attorneys of the same or similar skill and experience in the central Florida market.   Upon review of the information provided by Attorney Anthony, I recommend that the Court find that, in the absence of objection, that $175.00 per hour and $90.00 per hour are, respectively, reasonable hourly rates in the central Florida market for attorneys and paralegals with practice and experience comparable to the attorneys and paralegals who performed the work for which fees are sought in this case.   *See Coastal Fuels Mktg. v. Fla. Express Shipping Co.*, 207 F.3d 1247, 1252 (11th Cir. 2000) (per curiam) ("[T]he court 'is itself an expert . . . and may consider its own knowledge and experience concerning reasonable and proper fees.'").

3.   <u>Lodestar</u>.

Under the lodestar approach, "the number of hours reasonably expended, determined in the first step, multiplied by a reasonable hourly rate, determined in the second step, produces the lodestar, which is an objective basis for the award of attorney fees."   *See Fla. Patient's Comp. Fund*, 472 So. 2d at 1151.   Based on the foregoing analysis, I recommend that the Court find that the lodestar attorneys' fee in this case is as follows:

| Timekeeper | Hours Worked | Hourly Rate | Total |
|---|---|---|---|
| Attorneys | 15.7 | $175.00 | $2,747.50 |
| Paralegals | 1.8 | $90.00 | $162.00 |
| **TOTAL** | | | $2,909.50 |

####### E.      Costs.

PNC seeks an award of $534.59 in costs against Kimbrough & Associates, consisting of $400.00 in filing fees, $120.00 for the cost of service of process, and $14.59 in duplication costs. Doc. No. 24-2 ¶ 2.   Attorney Anthony has averred that all of the foregoing costs have actually been paid by counsel for PNC.   *Id.* ¶ 3.   He has also provided documents evidencing the requested costs.   *Id.* at 4-7.

As a prevailing party, PNC is entitled to a recovery of certain statutorily allowed costs. *See* Fed. R. Civ. P. 54(d).   In addition, the loan documents allow PNC to recover litigation costs, as follows:

> [First Obligation] Business Banking Line of Credit Agreement: "We may hire or pay someone else to help us collect this account if you fail to pay in accordance with this Agreement.   You agree to pay our collection costs (including, without limitation, the cost of in-house attorneys and staff), whether or not we hire anyone else to help us collect this account.   This includes, subject to any limits under applicable law, our attorneys' fees and legal expenses whether or not there is a lawsuit . . . ."   (Doc. No. 1-2 at 5 ¶ 18);

> [Second Obligation] Business Credit Line and Security Agreement: "Borrower agrees to pay upon demand all of Lender's costs and expenses, including without limitation court costs and reasonable attorney's fees, incurred in connection with the enforcement of this Agreement or the enforcement or protection of Lender's rights in the Property . . . ."   (Doc. No. 1-9 at 5 ¶ 16).

Under Florida law, a court may award costs that were agreed to at the inception of a contractual relationship.   *See Deutsche Bank Nat'l Trust Co. v. Fine*, No. 2:06-cv-417-FtM-34SPC, 2007 U.S. Dist. LEXIS 47712, at *22 (M.D. Fla. July 2, 2007) (citing, *inter alia*, *Nemours Found. v. Gauldin*, 601 So. 2d 574, 576-77 (Fla. 5th Dist. Ct. App. 1992)).   In addition to determining whether the costs are covered by the contractual provision at issue, courts should ensure that the amount of the costs is reasonable.   *Id.*

Upon review of the evidence submitted by PNC, I recommend that, in the absence of objection, the Court find that the costs PNC seeks to recover are reasonable and reimbursable.

*F.      Other Matters.*

PNC also asks that the Court enter an Order requiring Kimbrough & Associates to complete a Florida Rule of Civil Procedure Form 1.977 Fact Information Sheet in aid of execution pursuant to Florida Rule of Civil Procedure 1.560(c).   Doc. No. 24 ¶ 63.   Pursuant to Fed. R. Civ. P. 69(a)(2), "[i]n aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Florida Rule of Civil Procedure 1.560(c), in turn, provides that, if a prevailing party so requests, the judge shall include language in the final judgment requiring the judgment debtor to complete the Florida Rule of Civil Procedure Form 1.977 Fact Information Sheet within 45 days from the date of the final judgment.   Accordingly, and in the absence of objection from Kimbrough & Associates, I recommend that the Court grant PNC's request.

## V.      RECOMMENDATION.

For the reasons set forth above, I **RESPECTFULLY RECOMMEND** that the Court do the following:

(1) **GRANT** PNC's Second Renewed Motion for Final Default Judgment on Borrower (Doc. No. 24);

(2) **FIND** that Kimbrough & Associates is liable for breach of the First Obligation (Count I) and the Second Obligation (Count II);

(3) **FIND** that the Collateral posted to secure the First Obligation and the Second Obligation is subject to judicial foreclosure (Count V);

(4) **DISMISS** the claims against the guarantors (Counts III and IV);

(5) **FIND** that entry of final judgment of foreclosure against Kimbrough & Associates and an order to conduct a foreclosure sale of the Collateral is appropriate pending submission by PNC of identification of the Collateral and a proposed order authorizing a foreclosure sale in a form approved by the Court;

(6) **ASSESS** $2,909.50 in attorneys' fees and $534.59 in costs against Kimbrough & Associates;

(7) **ORDER** Kimbrough & Associates to pay to PNC damages in the total amount of unpaid principal ($93,511.32 on the First Obligation and $52,207.15 on the Second Obligation), late charges ($476.76 on the First Obligation and $293.18 on the Second Obligation) and prejudgment interest to be computed by PNC as of a date established by the Court following its Order on this Report and Recommendation;

(8) **REQUIRE** Kimbrough & Associates to complete Florida Rule of Civil Procedure Form 1.977 Fact Information Sheet, including all required attachments, within forty-five (45) days from the date the Court enters judgment in this case, or such other time as determined by the Court;

(9) **DIRECT** the Clerk of Court to enter a final judgment in a form the Court finds appropriate and, thereafter, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 10, 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy